James R. HEITMAN, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 54A05–9306–CR–201.[1]

Court of Appeals of Indiana, First District.

Jan. 18, 1994.

1. This case was diverted to our office on December 13, 1993, by direction of the Chief Judge.

Kurt R. Homann, Groves & Homann, Crawfordsville, for appellant.

Pamela Carter, Atty. Gen., Cynthia L. Ploughe, Deputy Atty. Gen., Office of Attorney General, Indianapolis, for appellee-plaintiff.

BAKER, Judge.

Today we decide under what circumstances Indiana's criminal statute of limitations tolls for charging non-resident criminal suspects.[2] Appellant-defendant James Heitman challenges his convictions for Child Molesting, a Class B felony,[3] and Incest, a Class D felony,[4] claiming the tolling section of the statute of limitations is unconstitutional.[5]

### FACTS

Twyla and James Heitman married and later had two daughters, Nichole and Natasha. Nichole was born September 29, 1972, and Natasha was born September 29, 1977. The family resided in Indiana. In 1985 Twyla suffered severe emotional problems and was committed to a mental hospital. Twyla divorced James upon discharge from the mental hospital. James received custody of the children, and the three eventually moved to Pennsylvania where James had obtained employment.

During the Heitman's marriage as Nichole approached her teenage years, she began to have behavior problems which continually worsened. In the beginning, her misconduct consisted mostly of poor grades, disobedience, and stealing from her parents. Later, she began to use illicit drugs, watch pornographic movies, and act violently toward her sister. She eventually dropped out of school and became pregnant out of wedlock.

While living in Pennsylvania, James decided that Nichole would improve if she lived in Arizona with the Dutterwalds, long-time family friends. Unhappy living with the Dutterwalds, Nichole returned to Indiana in 1987 to live with her mother. Nichole wrote letters to both James and his fiancee Cynthia, begging to return to Pennsylvania. Her pleas were unsuccessful and living with her mother did not work out, so Nichole moved in with her maternal grandparents in Martinsville.

After dropping out of school in 1987, Nichole told her mother and a counselor that her father had molested her. Yet, Nichole continued to beg her father to allow her to return to Pennsylvania. Sometime after she showed up unannounced at James' residence

---

2. IND.CODE 35–41–4–2 (Supp.1993).

3. IND.CODE 35–42–4–3(a) (1986).

4. IND.CODE 35–46–1–3 (Supp.1993).

5. Heitman raises a number of other issues which we do not address, because the constitutional issue is dispositive.

and he refused to let her return, Nichole recanted her allegations.

In 1988, Nichole renewed her allegations of molestation occurring in 1984 and 1985 to the Crawfordsville Police. Before and during the investigation, James remained in constant contact with his ex-wife and authorities in Indiana. Heitman even paid a police detective's expenses to travel to Pennsylvania to investigate Nichole's allegations. After the detective's trip to Pennsylvania, no further action was taken for over two years.

On September 6, 1990, the State charged Heitman by information with child molesting and incest for acts occurring between January 1984 and June 1985. A jury found Heitman guilty of both charges, for which the trial court sentenced him to fifteen and three years, to be served concurrently.

### DISCUSSION AND DECISION

Heitman contends that I.C. 35–41–4–2(g)(1),[6] a tolling provision of Indiana's criminal statute of limitations, violates the equal protection guarantee of Ind. Const. art. 1 § 23.

I.C. 35–41–4–2(a)(1) provides a five-year statute of limitations for a Class B, Class C, or Class D felony. However, I.C. 35–41–4–2(g) further provides, in part:

> The period within which a prosecution must be commenced does not include any period in which: (1) the accused person is not usually and publicly resident in Indiana or so conceals himself that process cannot be served on him.

The State, argues that I.C. 35–41–4–2(g)(1) tolls the statute of limitations when 1) the accused does not live in Indiana or 2) the accused so conceals himself that process cannot be served on him.

■ The prime objective in construing a statute is to determine and implement legislative purpose. *Superior Const. Co. v. Carr* (1990), Ind., 564 N.E.2d 281, 284. Where a statute is susceptible to more than one interpretation, however, a court may consider the

alternatives of a particular construction. *Id.* We presume the General Assembly is a reasonable body and would not intend an unreasonable result. *Guinn v. Light* (1990), Ind., 558 N.E.2d 821, 823.

■ The statute of limitations exists primarily to insure against inevitable prejudice and injustice to a defendant that a delay in prosecution creates. *Scott v. State* (1984), Ind.App., 461 N.E.2d 141, 144. The statute of limitations strikes a balance between an individual's interest in repose and the State's interest in having sufficient time to investigate and build its case. *Id.* The tolling provision involved here, I.C. 35–41–4–2(g)(1), serves the State's interest of ensuring that it can later prosecute a criminal suspect if, for a time, he hides or otherwise travels to avoid service of process.

Our constitution provides:

> The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens.

Ind. Const. art. 1 § 23. The General Assembly may not enact a statute which classifies and is unreasonable, arbitrary, or rests upon some ground of difference not having a fair and substantial relation to the object of the legislation. *Johnson v. St. Vincent Hospital, Inc.* (1980), 273 Ind. 374, 392, 404 N.E.2d 585, 597.[7]

Were we to enforce the State's interpretation of the statute of limitations, the absence of a fair and substantial relation between the classification of residence and the purpose of bringing criminals to justice would render I.C. 35–41–4–2(g)(1) unconstitutional. If a suspect has left Indiana and is evading extradition or is otherwise avoiding authorities, there would be reason to toll the statute of limitations. If a suspect has left Indiana but cooperates fully with Indiana authorities, and returns voluntarily to Indiana to face the charges against him, there would be no reason to toll the statute of limitations. While

---

6. I.C. 35–41–4–2(d)(1) at the time of the alleged offenses.

7. We do not reach the issue of whether I.C. 35–41–4–2(g)(1) impinges upon a fundamental right because the State's interpretation fails this lower level of scrutiny.

the logistics of investigating and prosecuting charges against a person outside Indiana might be more cumbersome, the mere fact that a person lives outside Indiana does not itself have a fair and substantial relation to the State's ability to bring that person to justice.[8]

Nevertheless, I.C. 35–41–4–2(g)(1) is capable of a reasonable and constitutional interpretation. *See Brady v. State* (1991), Ind., 575 N.E.2d 981, 984–85 (if statute capable of constitutional and unconstitutional interpretations, court applies constitutional interpretation). The language "that process cannot be served upon him" may modify the clause "is not usually and publicly resident in Indiana" as well as the clause "so conceals himself," since the two clauses are separated by an "or." This interpretation comports with the purpose of the statute of limitations and the tolling provision, to balance the State's interest in being able to prosecute and an individual's interest in being able to defend.

■ If a suspect leaves Indiana and is evading extradition or is otherwise avoiding authorities, the statute of limitations tolls. If a suspect has left Indiana but cooperates fully with Indiana authorities, and returns voluntarily to Indiana to face charges against him, the statute of limitations does not toll.

Under this interpretation, the statute classifies suspects based on their amenability to process. Unlike residence location, this straightforward classification bears a fair and substantial relationship to the State's interest in bringing a suspect to justice. Since this interpretation does not violate Indiana's equal protection clause, we adopt it. *See Brady*, at 984–85.

■ This interpretation also comports with the rule that we construe statutes to avoid absurdity, hardship, injustice, and restrictions of human liberty. *See Helms v.*

*American Security Co. of Indiana* (1939), 216 Ind. 1, 5–6, 22 N.E.2d 822, 824. The State's interpretation of I.C. 35–41–4–2 would work an injustice because one who has cooperated fully with authorities would suffer merely because he moved out of state. Furthermore, among the privileges and immunities our constitution protects are the freedom to travel and the freedom to pursue a lawful vocation. *See Strange v. Board of Comm'rs of Grant County* (1910), 173 Ind. 640, 649–50, 91 N.E. 242, 246. The State would impermissibly punish the innocent exercise of these rights.

Therefore, to avoid striking I.C. 35–41–4–2(g)(1) as unconstitutional, we hold it to toll the criminal statute of limitations only when a suspect is not amenable to process, whether he is in or out of Indiana.

■ Applying this interpretation to Heitman's case, we find that the statute of limitations was not tolled. Although he resided outside Indiana, Heitman remained in constant contact with Indiana authorities. He even paid for a police detective to travel to Pennsylvania to investigate the allegations against him. There is no evidence that the State had any difficulty in locating or investigating Heitman. It follows that the State would have had no difficulty in filing an information against Heitman. In fact, it is difficult to fathom how Heitman could have more fully cooperated with Indiana authorities. Because Heitman was not avoiding service of process and fully cooperated with authorities while living in Pennsylvania, I.C. 35–41–4–2(g)(1) did not toll the statute of limitations.

The last instance of misconduct allegedly occurred in June 1985. Therefore, the statute of limitations expired in June 1990. The State did not file charges until September 1990. The charges against Heitman were barred. I.C. 35–41–4–2(a). We therefore

---

**8.** The relevant portion of the tolling provision came into existence long before there were reliable procedures for extradition. *See* An Act for the limitation of criminal prosecutions, Chapter 69, § 2, 1820 Ind.Acts 137, 138. Since 1927, forty-seven states, including Pennsylvania, have adopted the Uniform Criminal Extradition Act, and one has adopted the newer Uniform Extradi-

tion and Rendition Act. Only South Carolina and Mississippi have adopted neither of these. Had Heitman not voluntarily returned to Indiana, the State could have availed itself of Pennsylvania's mandatory extradition. *See Commonwealth v. Inadi* (1982), 303 Pa.Super. 409, 411, 449 A.2d 753, 754; 42 Pa.C.S.A. § 9123 (1982).

vacate Heitman's convictions and order him immediately released from custody.

Judgment reversed.

SHARPNACK, C.J., and ROBERTSON, J., concur.